IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 MAY -2  AM 11: 33

CLERK_____
SO. DIST. OF GA.

| | | |
|---|---|---|
| WILLIAM L. STANLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 605-075 |
| | ) | |
| GLENN RICH, Warden, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The captioned matter, brought pursuant to 42 U.S.C. § 1983, is before the Court on Defendants' motions to dismiss (doc. nos. 3, 5, 8), which the Court has converted to motions for summary judgment. (See doc. no. 9). Plaintiff opposes the motions. (Doc. no. 14). Defendants also request that discovery in this case be stayed pending a resolution of their motions for summary judgment. (Doc. no. 27). Plaintiff does not oppose this motion. (See doc. no. 29).

For the reasons below, the Court **REPORTS** and **RECOMMENDS** that the motions for summary judgment be **GRANTED**, that Defendants' motion to stay be **DENIED** as **MOOT**, that Plaintiff's case be **DISMISSED** without prejudice for failure to exhaust administrative remedies, that an appropriate **FINAL JUDGMENT** be entered in favor of Defendants, and that this civil action be **CLOSED**.

## I. BACKGROUND

### A.    Plaintiff's Complaint

In his complaint, filed July 27, 2005, Plaintiff, an inmate at Rogers State Prison

("Rogers"), in Reidsville, Georgia avers that on April 8, 2005, Defendants Robert Rodriguez ("Rodriguez") and Lieutenant Reginald Langston ("Langston") brutally beat him. (Doc. no. 1, p. 4). Defendants Deputy Warden R.D. Collins ("Collins"), Deputy Warden John Paul ("Paul"), and Warden Glenn Rich ("Rich") allegedly condoned this behavior. (Id. at 5-8). Plaintiff avers that he did not exhaust administrative remedies out of fear of "certain retaliation." (Id. at 5).

## B.   Defendants' Arguments

On the other hand, Defendants argue that because Plaintiff failed to file any grievance regarding the use-of-force incident alleged in the complaint, Plaintiff failed to properly exhaust his administrative remedies prior to filing suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a). Accordingly, Defendants argue that the instant suit should be dismissed. In support of this argument, Defendants have provided two affidavits from Ms. Sarah Draper, Manager of the Office of Investigations and Compliance for the Georgia Department of Corrections ("DOC"). See Draper Aff. I (attached to doc. no. 4) & Draper Aff. II (attached to doc. no. 17).

Ms. Draper provides that, pursuant to DOC Standard Operating Procedure ("SOP") IIB05-0001 § VI, Rogers has maintained an administrative grievance process that is available to all inmates. See Draper Aff. I, ¶¶ 6-12. Ms. Draper also explains that a grievance may be filed out-of-time for good cause. Draper Aff. II, ¶¶ 13-15. Nevertheless, according to Ms. Draper, DOC records indicate that Plaintiff did not pursue any administrative remedy regarding the beating alleged in the complaint. Draper Aff. I, ¶¶ 13-14; see also Draper Aff. II, ¶¶ 16-17.

2

**C.    Plaintiff's Response**

In response, Plaintiff's counsel argues that Defendants threatened to beat him if he filed a grievance.  (Doc. no. 14, p. 2).  Plaintiff also argues that he did not pursue administrative remedies because it was "common knowledge" at Rogers that resort to the administrative process would be met with violent reprisals.  (Id.).  Consequently, Plaintiff argues that the administrative process was not really "available," and he cannot be deemed to have failed to exhaust administrative remedies under the PLRA.  (Id. at 5).

In support of these averments, Plaintiff provides an affidavit; therein, Plaintiff describes the alleged April 2005 beating.  See Pl.'s Ex. A.  Plaintiff also states that he chose to write his mother a letter rather than file a grievance because he was afraid and because Langston was "known to continue his harassment when someone reports his wrongdoing." Id. at 1.  Next, Plaintiff also provides that Rodriguez "gives me prolong [sic] stares intending to intimidate me."  Id. at 2.  Contrary to counsel's argument, Plaintiff does not state in his affidavit that Defendants ever actually threatened him.

In further support of his allegations, Plaintiff proffers:  1) an affidavit from former corrections officer Tommy Cardell describing incidents of inmate abuse at Rogers, prison counselors' attempts to discourage and prevent inmates from filing grievances, and Defendants' violent reprisals when inmates resorted to the administrative process, see Pl.'s Ex. B; and 2) a statement from inmate Gregory Bryant ("Bryant") describing Defendants' retaliation against him for filing grievances.  See Pl.'s Ex. C.

**D.    The Administrative Grievance Process**

Therefore, the key issue in this case is whether Plaintiff has complied with § 1997e(a).  Before assessing this question, it will be helpful to explain the grievance

3

procedure used in the Georgia state prison system.  Under SOP IIB05-0001 § VI(B), once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance.  The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance.  SOP IIB05-0001 § VI(B)(5).  As pointed out by Ms. Draper's affidavits, the timeliness requirements of the administrative process may be waived upon a showing of good cause.  See id § VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within ten (10) calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance.  Id § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance.  Id. § VI(C)(2).  Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond.  Id. § VI(C)(14).  If the inmate is not satisfied with the Warden's response to the formal grievance, he has five (5) business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond.  Id. § VI(D)(2),(5).  The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office.  Id.

Having clarified the factual background of the case, the Court turns to the merits of the motions for summary judgment.

4

## II.  DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[1] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S.

---

[1] The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

5

at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.      Plaintiff's Failure to Exhaust Administrative Remedies**

As the exhaustion of administrative remedies is a prerequisite to filing suit under the PLRA, exhaustion is a threshold inquiry. The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Furthermore, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). Simply put, if an administrative remedy is "available," it must be exhausted. 42 U.S.C. § 1997e(a).

To properly exhaust his claims, an inmate must satisfy any and all procedural requisites, including "administrative deadlines." Johnson v. Meadows, 418 F.3d 1152, 1154 (11th Cir. 2005), *petition for cert. filed*, (U.S. Sept. 8, 2005)(No. 05-6336). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules

6

governing prisoner grievances, he procedurally defaults his claims. Id. at 1159. Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, No. 05-10399, 2006 WL 122426, at *2 (11th Cir. Jan. 17, 2006) (citing Johnson, 418 F.3d at 1155); see also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999)("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies."). Similarly, in order to exhaust all available administrative remedies, an inmate must pursue an administrative appeal if his grievance is denied. Moore v. Smith, 18 F. Supp.2d 1360, 1362 (N.D. Ga. 1998).

Here, Plaintiff has put forth no evidence to contradict Defendants' assertion that he did not pursue *any* administrative remedy prior to filing suit. Rather, Plaintiff contends that the certainty of violent reprisal made administrative remedies "practically unavailable." (Doc. no. 14, p. 5). In this instance, the argument is unavailing. To begin, the Court is not persuaded by Plaintiff's contention that "general knowledge of [a] pattern and practice of brutally retaliating against inmates who file grievances" renders administrative remedies "practically unavailable." (Id.). To accept such an argument would eviscerate the exhaustion requirement.

First, to the extent Plaintiff raises a veiled argument that the grievance procedure at Rogers was inadequate or that resort to administrative remedy would have been futile, the Eleventh Circuit has foreclosed any such argument. Alexander, 159 F.3d at 1325-26. Moreover, in Porter, cited *supra*, the Supreme Court held that the PLRA's exhaustion requirement applied even to a prisoner alleging that the use of excessive force was a "prevailing circumstance" at his place of incarceration. 534 U.S. at 532. Justice Ginsberg,

7

writing for a unanimous Court, explained that a prisoner's allegations of "a prolonged and

sustained pattern of harassment and intimidation by corrections officers," cannot serve to

remove his case from the ambit of § 1997e(a). Id. at 530. Thus, the undersigned is not

persuaded that Plaintiff's alleged "general knowledge" of incidents of excessive force or

retaliation at Rogers served to render administrative remedies unavailable. See Boyd v. Corr.

Corp. of Am., 380 F.3d 989, 998 (6th Cir. 2004)("nonspecific allegations of fear" and

"subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies).

　　　　Of course, Plaintiff also avers that he was intimidated by intense stares from

Defendant Rodriguez, and that this threatening behavior inhibited him from filing a

grievance. Initially, the believability[2] of Plaintiff's averment is eroded by the fact that other

---

[2]The Court is aware that, as a general rule, "[i]ssues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." McCormick, 333 F.3d at 1240 n. 7. Nevertheless,

> [w]hile it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," Anderson, 477 U.S. at 252, and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.

Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005). Similarly, the Supreme Court has explained that "discredited testimony" cannot be relied upon to resist summary judgment. See Anderson, 477 U.S. at 256-57. Thus, in the instant case, where Plaintiff relies heavily upon his own vague and self-serving allegations, the Court properly considers whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Jeffreys, 426 F.3d at 555.

Furthermore, as the presiding District Judge has explained in a similar case:

> Congress enacted § 1997e(a) of the [PLRA] to curtail inmate litigation, not create an entire new layer of jury trials in the very overburdened court system that PLRA was meant to relieve. To hold that Priester is entitled to a jury trial on this preliminary issue [whether administrative remedies were "available"] would open the floodgates to even more litigation. Were this Court to hold otherwise, how many convicted criminals--in a legal world where civil-case originating perjury prosecutions are at best a rarity--would not then claim that their guards refused to avail them grievance forms or otherwise did something to excuse the exhaustion requirement? How many inmates like Priester, after pointing to the ensuing swearing match, would not then demand a jury trial on this preliminary issue, and thereby create a second litigation layer on top of the "merits" layer?
> . . . . [T]he Court concludes that . . . . exhaustion constitutes a preliminary issue for which no jury trial right exists, and therefore judges can and should make credibility

inmates at Rogers who have recently brought excessive force claims against Defendants did exhaust administrative remedies regarding their claims. See, e.g., Hooks v. Rich, CV 605-065 (S.D. Ga. July 13, 2005); Jamison v. Rich, CV 605-066 (S.D. Ga. July 13, 2005). Secondly, the Court doubts that allegedly malevolent stares alone may suffice to obviate the exhaustion requirement. See, e.g., Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004)(explaining that threats of violence may only serve to render administrative remedies unavailable if a "similarly situated individual of ordinary firmness" would have been deterred from pursuing a grievance). The Court should also note that the presiding District Judge recently rejected Plaintiff's argument in a strikingly similar case brought by inmate Bryant against Defendants. See Bryant v. Rich, CV 605-064, doc. no. 38, *adopted by* doc. no. 51 (S.D. Ga. Jan. 23, 2006), *appeal docketed*, No. 06-11116 (11th Cir. Feb. 9, 2006).

That said, it is true that those federal courts to consider the issue have held that threats of violent reprisal can, under certain circumstances, render administrative remedies "unavailable" or otherwise justify an inmate's failure to pursue them. See, e.g., Hemphill, 380 F.3d at 686-91. More generally, courts have held that prison officials may, as a result of their own conduct, become equitably estopped from relying upon § 1997e(a).[3] See, e.g., Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004)(*per curiam*); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Miller v.

---

determinations on exhaustion-excusal issues.

Priester v. Rich, CV 605-071, doc. no. 41, pp. 6-7 (S.D. Ga. Apr. 4, 2006)(notice of appeal filed Apr. 10, 2006)(Edenfield, J.).

[3]To the extent Plaintiff is arguing that Defendants should be estopped from relying on § 1997e(a) because of their own misconduct, it is his burden to establish his entitlement to this equitable remedy. See Lewis v. Washington, 300 F.3d 829, 834 (7th Cir. 2002).

Norris, 247 F.3d 736, 740 (8th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 n.2

(5th Cir. 2001).  Of particular note, in Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir.

1999), the Eleventh Circuit explained that prison officials cannot "unequivocally" tell an

inmate that resort to administrative remedies is "precluded" or "even prohibited" and then

rely upon § 1997e(a) to argue that the inmate failed to exhaust available administrative

remedies.  Taken together, these cases stand for the simple proposition that prison officials

should not benefit from conduct which inhibits an inmate from properly exhausting

administrative remedies.  That principle of law does not alter the key inquiry--whether

administrative remedies were actually "available" to Plaintiff prior to the filing of the instant

suit.

Here, even giving Plaintiff's intimidation argument the benefit of all doubt, it is clear

that administrative remedies became available prior to the filing of his complaint on July 27,

2005.  In response to Plaintiff's argument, Defendants offer the affidavit of Mr. Arnie

Depetro, Director of the Corrections Division of the DOC.  Depetro Aff., ¶ 3 (attached to

doc. no. 17).  According to Mr. Depetro, on May 18, 2005, the DOC and the Georgia Bureau

of Investigation began investigating allegations of the excessive use of force at Rogers.  Id. ¶

4.  By May 20, 2005, Rich, Langston, Collins, and two other guards at Rogers had been

suspended.  See Defs.' Ex. 1 (attached to Depetro Aff.).  A new Warden and Deputy Warden

of Security were installed on May 23, 2005.  Depetro Aff., ¶ 6.  A wave of suspensions and

firings then ensued:  Between May 19 and July 5, 2005, 14 Rogers employees were

suspended; 9 of them would eventually be terminated.  See Defs.' Ex. 1.  In particular,

although Collins would later be reinstated, Rich retired, and Langston was fired.  Id.  Depetro

also alleges that he and his "management team" have established a presence at Rogers and

that he remains "visible throughout the institution to insure that staff are conducting themselves" properly. Depetro Aff., ¶ 9. Finally, Depetro contends that many other changes have been made at Rogers, including the installation of new video cameras and the institution of new training programs for corrections officers at Rogers. See generally id.

Defendants argue that the events at Rogers beginning in May 2005 changed the culture at the prison and removed the atmosphere of intimidation alleged by Plaintiff. As a result, Defendants maintain that Plaintiff cannot argue that administrative remedies are not available to him. In this regard, Defendants point out that, once conditions at Rogers changed, Plaintiff could have filed an out-of-time grievance and cited Defendants' intimidation as good cause for his failure to timely pursue administrative remedies. (Doc. no. 17, pp. 2-3). Perhaps ironically, Defendants thus implicitly argue that, had Plaintiff filed a complaint in federal court before May 2005, his failure to exhaust might be excusable, but that since Plaintiff failed to file in federal court until after administrative remedies became available to him, he is required to exhaust.

Admittedly, Mr. Depetro's affidavit all but concedes that inmate abuse was occurring at Rogers before May 2005. That said, Defendants' evidence, which Plaintiff has not controverted, effectively demonstrates that the events of May 2005 would have removed any impediment to pursuing administrative remedies. In analogous cases, the Court has explained that if a change in an inmate's conditions of confinement--e.g., transfer to another prison--removes the prospect of retaliation for pursuing administrative remedies and renders the grievance process "available," the inmate's failure to exhaust can no longer be justified.[4]

---

[4]Similarly, in Hilton v. Secretary for Dep't of Corr., No. 01-14148, 2005 WL 3802979, at *5 (11th Cir. Nov. 1, 2005), Hilton, a state prisoner, alleged that he could not exhaust administrative remedies because he was denied grievance forms while in "administrative confinement." The Eleventh Circuit explained that

See Priester, CV 605-071, doc. no. 35, *adopted by* doc. no. 41; Langford v. Rich, CV 605-073, doc. no. 33 (S.D. Ga. Mar. 9, 2006); Bryant v. Rich, CV 605-064, doc. no. 38, *adopted by* doc. no. 51.

Of course, Plaintiff may also argue that resort to an administrative remedy following the events of May 2005 would have been a superfluous or merely formalistic exercise. Unfortunately for Plaintiff, his subjective beliefs in this regard are simply not relevant. See, e.g., Lyon v. Vande Krol, 305 F.3d 806, 809 (8th Cir. 2002)("It does not matter, finally, that Mr. Lyon may have subjectively believed that there was no point in his pursuing administrative remedies . . . . § 1997e(a) does not permit the court to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available.'"). Under the PLRA, the *sole* issue is whether an administrative remedy is available. Alexander, 159 F.3d at 1326 (explaining that under PLRA courts are "to focus solely on whether an administrative remedy program is 'available'").

Moreover, requiring Plaintiff to exhaust administrative remedies in this case furthers the purpose and policy goals of § 1997e(a). Section 1997e(a)'s goals are simple:

> 1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

---

"Hilton's contention . . . [did] not entitle him to relief because he fail[ed] to allege that he was unable to obtain these forms once he was released from confinement." Id. Thus, albeit in an unpublished opinion, the Eleventh Circuit has endorsed this Court's view that once the impediment to exhaustion is removed, an inmate's failure to utilize administrative remedies can no longer be justified.

Johnson, 418 F.3d at 1156 (quoting Alexander, 159 F.3d at 1327). Bearing these goals in mind, it is clear that the principal purpose of § 1997e(a) is to afford prison officials the first opportunity to resolve an inmate's claims.[5] See id.

Here, requiring Plaintiff to exhaust administrative remedies will give state prison officials the first opportunity to resolve Plaintiff's complaint mandated by § 1997e(a). Furthermore, exhaustion of the administrative process will allow for the development of the factual background of Plaintiff's claims. In addition, it should not be overlooked that, even should Plaintiff be denied relief via the administrative process, the administrative authority "'may give a statement of its reasons that is helpful to the district court in considering the merits of the claim.'" Alexander, 159 F.3d at 1325 (quoting Irwin v. Hawk, 40 F.3d 347, 349 (11th Cir. 1994)). Finally, requiring Plaintiff to exhaust administrative remedies in this case will reinforce the mandatory nature of the exhaustion requirement and discourage other inmates from "deliberate[ly] flouting" the administrative process.

It should also be noted that, contrary to Plaintiff's argument, requiring exhaustion will not "close the courthouse door" on him. (Doc. no. 14, p. 7). Dismissing the instant case without prejudice will not bar Plaintiff from refiling after exhausting administrative remedies.[6] See Wendell v. Asher, 162 F.3d 887, 892 (5th Cir. 1998)(affirming dismissal

---

[5]In addition, the exhaustion requirement is meant to serve as a barrier to frivolous prisoner lawsuits. Johnson, 418 F.3d at 1157 (quoting Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004)).

[6]Although it is at least arguable that the Court has authority to dismiss Plaintiff's claims with prejudice for failure to exhaust administrative remedies, the Court determines that it would not be appropriate to do so at this time. Cf. Johnson, 418 F.3d at 1157 (quoting Marsh v. Jones, 53 F.3d 707, 710 (5th Cir. 1995)) ("[w]ithout the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one"). It is the longstanding practice of the Court to dismiss cases such as this one without prejudice, in order that the prisoner plaintiff may attempt to properly exhaust administrative remedies. See, e.g., CV 605-064, doc. no. 51. At any rate, Defendants have not requested that Plaintiff's case be dismissed with prejudice.

without prejudice in the absence of any "apparent barriers" to refiling after administrative remedies are exhausted). Plaintiff's principal claim is that he was beaten in April 2005. (See doc. no. 1). Thus, the applicable two-year statute of limitations will not bar a refiled action. See Mullinax v. McElhenney, 817 F.2d 711, 716 n.2 (11th Cir. 1987) (citing Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986)); see also O.C.G.A. § 9-3-33. Furthermore, should Plaintiff encounter a possible statute of limitations bar, he will have an opportunity to demonstrate that he is entitled to equitable tolling. See Leal v. Georgia Dep't of Corr., 254 F.3d 1276, 1280 (11th Cir. 2001). Simply put, there is no reason, legal or equitable, not to require compliance with § 1997e(a).

In sum, Defendants are entitled to summary judgment, and the instant case should be dismissed.[7]

### III. CONCLUSION

For the above reasons, the Court **REPORTS** and **RECOMMENDS** that the motions for summary judgment (doc. nos. 3, 5, 8) be **GRANTED**, that Defendants' motion to stay (doc. no. 27) be **DENIED** as **MOOT**, that Plaintiff's case be **DISMISSED** without prejudice for failure to exhaust administrative remedies, that an appropriate **FINAL JUDGMENT** be entered in favor of Defendants, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this _2nd_ day of May, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[7]The Court's conclusion in this regard pretermits consideration of Defendants' remaining arguments.

14