IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | |
|---|---|
| WILLIAM L. STANLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 605-075 |
| | ) |
| GLENN RICH, Warden, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

After a careful, *de novo* review of the file, the Court concurs with the Magistrate Judge's ("MJ") Report and Recommendation to which objections have been filed. In the instant case, Plaintiff avers that, while he was incarcerated at Rogers State Prison ("Rogers") in Reidsville, Georgia, he was brutally beaten on April 8, 2005. The MJ recommended that Defendants be granted summary judgment and that this case be dismissed without prejudice due to Plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Doc. no. 35.

In his objections, Plaintiff contends that the threat of violent retribution at Rogers rendered administrative remedies "practically unavailable." Doc. no. 37, p. 2. In short, Plaintiff avers that he was too afraid to file a grievance. Interestingly, in his objections, Plaintiff also contends, through counsel, that he availed himself of the "emergency" grievance procedure, which allows an inmate to bypass the informal grievance process in cases involving the alleged use of excessive force. Id. at 7; see also Draper Aff. II, ¶ 13;

Georgia Department of Corrections Standard Operating Procedure ("SOP") IIB05-0001 § VI(E); SOP IIB05-0001, Attach. 9.

In rejecting Plaintiff's contentions regarding the unavailability of administrative remedies, the MJ relied upon: 1) Defendants' evidence that an administrative grievance process is generally available to inmates at Rogers, 2) the absence of *any* evidence to support Plaintiff's counsel's assertion that Plaintiff ever pursued administrative remedies of any kind, 3) Defendants' evidence that dramatic changes at the prison in May 2005[1] would have removed any impediments to exhaustion of administrative remedies that may have existed prior to that date, and 4) the fact that other inmates at Rogers who have recently brought excessive force claims against Defendants did exhaust administrative remedies before filing suit. Doc. no. 35, pp. 7-11. Based on the evidence, the MJ disbelieved Plaintiff's claims that he had been too afraid to pursue administrative remedies before filing suit on July 27, 2005. The MJ also noted that the spectre of intimidation alleged by Plaintiff could not explain his failure to pursue administrative remedies after the events of May 2005.

In support of his objections, Plaintiff relies upon an affidavit in which he describes the alleged April 8, 2005 beating, states that he saw Defendant Langston beat another inmate, notes that Defendant Langston was "known to continue his harassment when someone reports his wrongdoing," and also provides that Defendant Rodriguez "[gave him] prolong [sic] stares intending to intimidate me." Pl.'s Ex. A, pp. 1-2. Of particular note, this

---

[1] These changes included the installation of a new warden and deputy warden, personal oversight of Rogers by Mr. Arnie Depetro, the Director of the Corrections Division of the Georgia Departmen of Corrections, and the suspension and eventual termination of several corrections officers. Doc. no. 35, p. 10.

2

affidavit also directly contradicts Plaintiff's present contention that he pursued the "emergency" grievance procedure, as Plaintiff's affidavit provides that he wrote his mother a letter instead of pursuing administrative remedies. Id. at 1.

Next, Plaintiff provides the affidavit of ex-corrections officer Tommy Cardell, who describes guard-inmate beatings, cover-ups, retaliatory beatings, and efforts to deter prisoners from filing grievances. Pl.'s Ex. C. According to Plaintiff, he should be afforded an extension of time to conduct discovery in order to depose Mr. Cardell and to uncover additional evidence of beatings at Rogers. See doc. no. 37. Interestingly, Plaintiff now also offers the conclusory argument that he should be deemed to have satisfied §1997e(a) because the alleged beatings were investigated by "Internal Affairs." Id. at 5-6. Finally, Plaintiff also argues that the MJ's credibility determination amounted to improper factfinding in contravention of Fed. R. Civ. P. 56. Id. at 16.

To begin, the Court acknowledges that threats of violent reprisal may, in some circumstances, render administrative remedies "unavailable" or otherwise justify an inmate's failure to pursue them. See, e.g., Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004). Nevertheless, the MJ correctly concluded in this instance that Plaintiff has not come forward with sufficient evidence to avoid summary judgment. First of all, an inmate's "non-specific allegations of fear" do not furnish excuse for failure to exhaust administrative remedies. See Boyd v. Corr. Corp. of Am., 380 F.3d 989, 998 (6th Cir. 2004). The Court also agrees with the MJ's conclusion that "allegedly malevolent stares alone" will not suffice to obviate the exhaustion requirement. Doc. no. 35, p. 9 (citing Hemphill, 380 F.3d at 688 (explaining that threats of violence may only serve to render administrative remedies

unavailable if a "similarly situated individual of ordinary firmness" would have been deterred from pursuing a grievance)).

Also of note, the undersigned recently rejected Plaintiff's "improper factfinding" argument in a strikingly similar case. See Priester v. Rich, CV 605-071, doc. no. 41 (S.D. Ga. Apr. 4, 2006), *appeal docketed*, No. 06-12290 (11th Cir. Apr. 21, 2006). In so doing, the Court explained:

> Congress enacted § 1997e(a) of the [PLRA] to *curtail* inmate litigation, not create an entire new layer of jury trials in the very overburdened court system that PLRA was meant to relieve. To hold that Priester is entitled to a jury trial on this preliminary issue [whether administrative remedies were "available"] would open the floodgates to even more litigation. Were this Court to hold otherwise, how many *convicted criminals*--in a legal world where civil-case originating perjury prosecutions are at best a rarity--would *not* then claim that their guards refused to avail them grievance forms or otherwise did something to excuse the exhaustion requirement? How many inmates like Priester, after pointing to the ensuing swearing match, would *not* then demand a jury trial on this *preliminary* issue, and thereby create a *second* litigation layer on top of the "merits" layer?
> . . . . [T]he Court concludes that . . . . exhaustion constitutes a preliminary issue for which no jury trial right exists, and therefore judges can and should make credibility determinations on exhaustion-excusal issues.

Id. at 6-7. Accordingly, the Court also rejects Plaintiff's argument in the instant case that he is entitled to jury determination of the facts regarding whether administrative remedies were "available" to him.

At any rate,

> [w]hile it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," Anderson [v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)], and thus whether there are any "genuine" issues of material fact, without making some

4

assessment of the plaintiff's account.

Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005). Similarly, the Supreme Court has explained that "discredited testimony" cannot be relied upon to resist summary judgment. See Anderson, 477 U.S. at 256-57. Thus, in the instant case, where Plaintiff relies heavily upon his own self-serving allegations, the Court properly considers whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Jeffreys, 426 F.3d at 555. Here, the Court agrees with the MJ's credibility findings and **ADOPTS** them as its own.

More importantly, the Court agrees with the MJ's conclusion that once a change in an inmate's conditions of confinement removes the prospect of retaliation for pursuing administrative remedies and renders the grievance process "available," an inmate's failure to exhaust can no longer be justified. Indeed, Priester stands for this very proposition. CV 605-071, doc. no. 35, pp. 8-9, *adopted by* doc. no. 41 (inmate's transfer to another prison eliminated prospect of violent retaliation for pursuing administrative remedies). In his objections, Plaintiff does not even address the MJ's conclusion that changes at Rogers in May 2005 rendered administrative remedies "available" before Plaintiff filed suit. This failure is fatal to Plaintiff's suit.

Once administrative remedies became available, Plaintiff was obliged to exhaust them before filing suit. See Hilton v. Secretary for Dep't of Corr., No. 01-14148, 2005 WL 3802979, at *5 (11th Cir. Nov. 1, 2005). In Hilton, a state prisoner alleged that he could not exhaust administrative remedies because he was denied grievance forms while in "administrative confinement." Id. The Eleventh Circuit explained that "Hilton's contention

5

. . . [did] not entitle him to relief because he fail[ed] to allege that he was unable to obtain these forms once he was released from confinement." Id. Thus, albeit in an unpublished opinion, the Eleventh Circuit has endorsed this Court's view that once the impediment to exhaustion is removed, an inmate's failure to utilize administrative remedies can no longer be justified. In sum, even assuming *arguendo* (which the Court does not) that Plaintiff was prevented from pursuing administrative remedies prior to May 2005, Plaintiff's failure to pursue an out-of-time grievance following the events of May 2005 requires the Court to dismiss the instant suit under § 1997e(a).

Accordingly, the Report and Recommendation of the Magistrate Judge is **ADOPTED** as the opinion of the Court. Therefore, Plaintiff's motion for extension of time for discovery (doc. no. 37) is **DENIED**, Defendants' motions for summary judgment (doc. nos. 3, 5, & 8) are **GRANTED**, Defendants' motion to stay (doc. no. 27) is **DENIED** as **MOOT**, and Plaintiff's case is **DISMISSED** without prejudice for failure to exhaust administrative remedies. An appropriate **FINAL JUDGMENT** is entered in favor of Defendants, and this civil action is **CLOSED**.

SO ORDERED this ___ day of June, 2006.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA